Russell G. Wheeler
Bar Roll No. 517881
Charny & Associates
9 West Market Street
Rhinebeck, New York 12572
Tel - 845-876-7500
Fax - 845-876-7501
rwheeler@charnyandassociates.com

Attorneys for Plaintiff MaryAnn Tozzi

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARYANN TOZZI,<br><br>                                    Plaintiff,<br><br>    v.<br><br>NEW PALTZ CENTRAL SCHOOL DISTRICT, TOWN OF NEW PALTZ, TOWN BOARD OF THE TOWN OF NEW PALTZ, NEW PALTZ POLICE DEPARTMENT, BOARD OF POLICE COMMISSIONERS, TOWN OF NEW PALTZ, RICHARD WIESENTHAL, in his individual capacity, and JOSEPH SNYDER, in his individual capacity,<br><br>                                    Defendants. | COMPLAINT<br><br>Civil Action No.<br><br>1:16-CV-278[GLS/CFH] |

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff for damages and other relief pursuant to: (i) 42 U.S.C. § 1983 based on Defendants violation of Plaintiff's First and Fourteenth Amendment Constitutional rights; and (ii) tortious interference with Plaintiff's contractual rights and business relations.

1

## JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 in that Plaintiff's claims are brought under 42 U.S.C. § 1983.  This Court has supplemental jurisdiction over the state law claims raised by virtue of 28 U.S.C. § 1367.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the State of New York in Ulster County, within the Northern District of New York.

## PARTIES

4.      Plaintiff MaryAnn Tozzi (herein Plaintiff) is an individual residing in Ulster County New York and served as a school crossing guard for the New Paltz Central School District and the Town of New Paltz.

5.      Defendant New Paltz Central School District (herein Defendant School District) is a school district organized and existing under the laws of the State of New York.

6.      Defendant Town of New Paltz (herein Defendant Town) is a municipal corporation organized and existing under the laws of the State of New York.

7.      Defendant Town Board, Town of New Paltz (herein Defendant Town Board) is the governing body of the Town of New Paltz.

8.      Defendant New Paltz Police Department (herein Defendant Police Department) is a department of the Town of New Paltz responsible for ensuring public safety and enforcing State, County and local laws within in the Town of New Paltz.

9.      Defendant Board of Police Commissioners, Town of New Paltz is a commission organized by the Town Board of New Paltz and operated by the Town of New Paltz and the

2

Town Board of New Paltz with oversight and administration of the New Paltz Police Department for the benefit of the Town of New Paltz.

10.   Defendant Richard Wiesenthal (herein Defendant Wiesenthal) is, and all time relevant herein was, employed by Defendant School District as principal of its Middle School.

11.   Defendant Joseph Snyder (herein Defendant Snyder) is and all times relevant herein was employed by Defendant Police Department as Chief.

## PLAINTIFF'S ENGAGEMENT TO SERVE AS A SCHOOL CROSSING GUARD

12.   In or around September 2013, Plaintiff began performing services as a school crossing guard for Defendant Town and Defendant School District in New Paltz, New York.

13.   As a school crossing guard, Plaintiff was required to assist students of Defendant School District in crossing roadways and travelling safely to school in the vicinity of the New Paltz Middle School.

14.   Upon information and belief, the funds associated with Plaintiff's service as a crossing guard (including payment for her services and cost of fingerprinting and background check) were provided to Defendant Town by Defendant School District.

15.   Upon information and belief, Defendant Town engaged Plaintiff to serve as a crossing guard for the benefit of Defendant School District and of Defendant Town's residents.

16.   Upon information and belief, Defendant Town's engagement of Plaintiff extended to establishing the times and locations for the performance of her services, coordinating Plaintiff's schedule with that of other individuals engaged to serve as crossing guard, recording Plaintiff's hours as reported by her, training Plaintiff, issuing payment to Plaintiff, obtaining reimbursement from Defendant School District for the cost of Plaintiff's services, issuing

3

Plaintiff an IRS form 1099, and providing Plaintiff equipment (including a fluorescent safety vest and stop sign).

17.    Upon information and belief, Defendant Police Department was responsible for the day-to-day administration and oversight of Plaintiff's services, including by establishing the times and locations for the performance of her services, coordinating Plaintiff's schedule with that of other individuals engaged to serve as crossing guard, reporting Plaintiff's hours as reported by her, training Plaintiff, and providing Plaintiff equipment (including a fluorescent safety vest and stop sign).

18.    For the duration of Plaintiff's engagement by Town Defendant as a school crossing guard, Defendant Snyder was the individual with Defendant Police Department responsible for the administration and oversight of Plaintiff's services as set forth in the paragraph immediately supra.

19.    Defendant Town's engagement of Plaintiff as a crossing guard was not pursuant to a written contract.

20.    At no point during her engagement by Defendant Town was Plaintiff provided any policy or procedure manual, written terms or written directive as to any policy or procedure of Defendant Town or Defendant School District.

21.    At no point during her engagement by Defendant Town was Plaintiff advised of the existence of -- or that she subject to -- a policy concerning her speech, her use of social media, internet or electronic communications.

22.    Beginning with her engagement by Defendant Town and until the termination of her service, Plaintiff was paid twelve dollars ($12.00) per one hour shift; Plaintiff worked two (2) such shifts on each school day.

4

23.    From her engagement by the Town and until shortly before the termination of her service, Plaintiff performed her duties on every school day.

24.    Upon information and belief, Defendant Town engaged an individual named Lou Ostrowski as an additional crossing guard shortly before Plaintiff's separation from service.

25.    Upon Defendant Town's engagement of Ostrowski and until the termination of Plaintiff's service, Plaintiff continued to work two (2) shifts each day, on approximately half the school days of Defendant School District.

26.    At all times during which she was engaged by Defendant Town as a school crossing guard, Plaintiff rendered her services without incident, negative performance evaluation or feedback, or discipline until the summary termination of her service on or about March 9, 2015.

## PLAINTIFF'S SPEECH ON A MATTER OF PUBLIC CONCERN

27.    At all times relevant herein (including prior to and during her engagement by Defendant Town as a school crossing guard), Plaintiff took an active interest and involvement in local civic issues, including pedestrian safety by, inter alia, photographing unsafe or illegal traffic conditions, publishing such photographs to her social media accounts for public review and comment, and publishing commentary to social media on issues of pedestrian safety.

28.    Upon information and belief, Defendants were aware of Plaintiff's interest and involvement in the issue of pedestrian safety, including her photographing unsafe or illegal traffic conditions, publishing such photographs to her social media accounts for public review and comment, and publishing commentary to social media on issues of pedestrian safety prior to and during her engagement as a school crossing guard.

29.    During her engagement as a school crossing guard, Plaintiff photographed Defendant Snyder and other members of Defendant Police Department enforcing traffic laws and performing other traffic-related duties and published such photographs to her social media account with complementary messages.

30.    During her engagement by Defendant Town as a crossing guard, Plaintiff photographed unsafe or illegal traffic conditions, including vehicles, and published such photographs to her social media accounts with commentary for public review and comment both while on and off shift.

31.    At no point prior to the termination of her service did Defendants communicate with Plaintiff concerning her photographing unsafe or illegal traffic conditions, including vehicles, and publishing such or other speech concerning pedestrian safety.

32.    At no point during her engagement as a crossing guard did Defendants advise Plaintiff that her activities in photographing unsafe or illegal traffic conditions, including vehicles, publishing such photographs to her social media accounts for public review and comment, and publishing commentary on issues of pedestrian safety were unacceptable or inappropriate it.

33.    In or about the 2014 to 2015 school year, Defendant Snyder stated to Plaintiff, "I'm telling you as a friend to watch what you post," or words to that effect, which Plaintiff understood to refer to her publication of photographs and comments concerning pedestrian safety to social media.

34.    In making the statement described by the paragraph immediately supra, Defendant Snyder spoke in his individual capacity and explicitly disclaimed that he was

speaking in official capacity with Defendants Town, Police Department, Town Board, and/or Police Commission.

35.     At no point during her engagement by Defendant Town did the scope of Plaintiff's responsibilities include investigating, photographing, documenting, reporting or publicizing traffic conditions and/or issues of pedestrian safety.

36.     Starting at the beginning of the 2014-2015 school year, Plaintiff observed a driver regularly exiting the parking lot of the New Paltz Middle School by making an illegal and unsafe left turn onto Manheim Road.

37.     Throughout the 2014-2015 school year, Plaintiff advocated for pedestrian safety in connection with the actions of such driver by photographing the driver's vehicle as it made the unsafe and illegal left turn, publishing such photographs to her social media accounts with commentary, commenting on her social media accounts and those of local government officials and bodies, advocating for Defendant Police Department to enforce applicable traffic laws at the relevant location, and contacting Defendant Police Department to request that it dispatch officers to the location during school hours to enforce relevant traffic laws.

38.     In or about early March 2015, Plaintiff witnessed officers of Defendant Police Department issue a traffic citation to the driver of the vehicle that Plaintiff had observed regularly making unsafe and illegal left turns out of the parking lot of the New Paltz Middle School during the 2014-2015 school year.

39.     Plaintiff thereafter obtained from the local criminal court the name of the driver who had been by ticketed by Defendant Police Department and discovered that said driver was employed by Defendant School District as an instructor at the New Paltz Middle School.

7

40.   On or about March 9, 2015, Plaintiff published a message to her public Facebook account in which she named the ticketed driver, identified the ticketed driver as an instructor at New Paltz Middle School who had been making an illegal left turn out of the school parking lot, and urged the local criminal court and the officer of Defendant Police Department who issued the citation not to permit a plea reduction.

41.   Upon information and belief, at no point during his engagement by Defendant Town did crossing guard Ostrowski speak publicly to advocate on behalf of pedestrian safety by, inter alia, photographing unsafe or illegal traffic conditions, including vehicles, or publishing such photographs for public review and comment.

## PLAINTIFF'S SEPARATION FROM SERVICE

42.   Upon information and belief, Defendant Wiesenthal viewed Plaintiff's posting to her Facebook account concerning the New Paltz middle school ticketed by Defendant Police Department approximately eleven (11) minutes after it was published by Plaintiff.

43.   Defendant Wiesenthal immediately thereafter faxed a printed a screen shot of Plaintiff's Facebook posting to Defendant Snyder.

44.   Upon information and belief, Defendant Wiesenthal contemporaneously requested to Defendant Snyder that Defendant Town terminate Plaintiff's engagement as crossing guard based upon Plaintiff's publication of the identification of the ticketed motorist as an instructor employed by Defendant School District and Plaintiff's request that the motorist not be offered a plea reduction.

45.   Upon information and belief, Defendant Wiesenthal represented to Defendant Snyder that Defendant School District he was acting on behalf of Defendant School District in requesting that Defendant Town terminate Plaintiff's engagement as a school crossing guard.

8

46.    Approximately thirty (30) minutes after Plaintiff published her Facebook post concerning the ticketed motorist, Defendant Snyder telephoned Plaintiff and requested that she meet him at the headquarters of Defendant Police Department.

47.    When Plaintiff thereafter met with Defendant Snyder within his office at the headquarters of Defendant Police Department on or about March 9, 2015, Defendant Snyder summarily terminated Plaintiff's services as a school crossing guard.

48.    Upon information and belief, at no time relevant herein did Defendant Town terminate the services of Ostrowski, the additional crossing guard it engaged prior to March 9, 2015.

## DEFENDANT TOWN'S REFUSAL TO REINSTATE PLAINTIFF'S SERVICES

49.    On or about March 19, 2015, Defendants Town Board and Police Commission met concerning the termination of Plaintiff's engagement as school crossing guard but refused to rescind such termination.

50.    As a result of the termination of Plaintiff's services as a school crossing guard and Defendant Town's refusal to reinstate Plaintiff's services as a school crossing guard, Plaintiff has suffered emotional distress and mental anguish and been deprived of the monetary value of her engagement to provide such services.

## PLAINTIFF'S SERVICE OF A VERIFIED NOTICE OF CLAIM

51.    On June 2, 2015 Defendant School District was served with a Verified Notice of Claim upon which the relevant portions of the instant complaint are founded. More than thirty days have elapsed since said service.

9

FIRST CAUSE OF ACTION
(42 U.S.C. § 1983 -- First Amendment)

52.  Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth fully herein.

53.  By identifying the motorist responsible for regularly executing unsafe and unlawful left turns from the New Paltz Middle School parking lot and stating that a plea reduction should not be offered, Plaintiff, by virtue of its content, engaged in speech on a matter of public concern.

54.  Defendants have no adequate justification for treating the Plaintiff differently from any other member of the general public and such treatment is purely retaliatory.

55.  Defendants caused termination of Plaintiff's service as a school crossing guard in retaliation for Plaintiff's engaging in speech on a matter of public concern.

56.  Defendant Town, Defendant Town Board and Defendant Police Commission refused to reinstate Plaintiff's service as a school crossing guard in retaliation for Plaintiff's engaging in speech on a matter of public concern.

57.  The retaliatory acts of Defendant Snyder and Defendant Wiesenthal are acts that violate clearly established Constitutional rights of which a reasonable person would have known, including Plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution.

58.  For all relevant time periods up until in or about March 9, 2015, Defendant Snyder was the municipal official with final decision making authority within Defendant Police Department, and he in turn caused the violation of Plaintiff's civil rights.

59.  For all relevant time periods up until in or about March 19, 2015, Defendant Town Board and Defendant Police Commission were the municipal bodies with final oversight over Defendant Police Department, and in turn caused the violation of Plaintiff's civil rights.

10

60.     Defendant Police Commission failed to properly train and/or supervise Defendant Snyder, amounting to deliberate indifference to Plaintiff's Constitutional rights to be free from First Amendment retaliation.

61.     Defendant School District failed to properly train and/or supervise Defendant Wiesenthal, amounting to deliberate indifference to Plaintiff's Constitutional rights to be free from First Amendment retaliation.

62.     As a result of Defendants' conduct, Plaintiff has suffered damages.

### SECOND CAUSE OF ACTION
(42 U.S.C. § 1983 -- Fourteenth Amendment)

63.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth fully herein.

64.     By identifying the motorist responsible for regularly executing unsafe and unlawful left turns from the New Paltz Middle School parking lot and stating that a plea reduction should not be offered, Plaintiff, by virtue of its content, engaged in speech on a matter of public concern.

65.     Defendants caused termination of Plaintiff's service as a school crossing guard in retaliation for Plaintiff's engaging in speech on a matter of public concern.

66.     Defendant Town, Defendant Town Board and Defendant Police Commission refused to reinstate Plaintiff's service as a school crossing guard in retaliation for Plaintiff's engaging in speech on a matter of public concern.

67.     Defendants have no adequate justification for treating the Plaintiff differently from any other member of the general public and such treatment is purely retaliatory.

11

68.    By terminating and refusing to reinstate Plaintiff's services as a school crossing guard, Defendants intentionally treated differently from others similarly situated.

69.    There is no rational basis for Defendants' disparate treatment of Defendant.

70.    The retaliatory acts of Defendant Snyder and Defendant Wiesenthal are acts that violate clearly established Constitutional rights of which a reasonable person would have known, including Plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution.

71.    For all relevant time periods up until in or about March 9, 2015, Defendant Snyder was the municipal official with final decision making authority within Defendant Police Department, and he in turn caused the violation of Plaintiff's civil rights.

72.    For all relevant time periods up until in or about March 19, 2015, Defendant Town Board and Defendant Police Commission were the municipal bodies with final oversight over Defendant Police Department, and in turn caused the violation of Plaintiff's civil rights.

73.    Defendant Police Commission failed to properly train and/or supervise Defendant Snyder, amounting to deliberate indifference to Plaintiff's Constitutional rights to be free from First Amendment retaliation.

74.    Defendant School District failed to properly train and/or supervise Defendant Wiesenthal, amounting to deliberate indifference to Plaintiff's Constitutional rights to be free from First Amendment retaliation.

75.    As a result of Defendants' conduct, Plaintiff has suffered damages.

## THIRD CAUSE OF ACTION
(Tortious Interference with Contractual Rights)

76.    Plaintiff repeats and reiterates each and every allegation contained in the preceding paragraphs as if set forth herein.

12

77.    Plaintiff was party to a contract with Defendant Town.

78.    Defendant Wiesenthal and Defendant School District were aware of the existence of such contract.

79.    Defendant Wiesenthal and Defendant School District intentionally induced Defendant Town to breach its contract with Plaintiff.

80.    As a result of the conduct of Defendant Wiesenthal and Defendant School District, Plaintiff has suffered damages.

## FOURTH CAUSE OF ACTION
(Tortious Interference with Prospective Business Relations)

81.    Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth fully herein.

82.    Plaintiff was party to business relations with Defendant Town.

83.    Defendant Wiesenthal and Defendant School District interfered with such relations.

84.    In so doing, Defendant Wiesenthal and Defendant School District acted with improper means.

85.    As a result of the conduct of Defendant Wiesenthal and Defendant School District, Plaintiff has suffered damages.

## JURY TRIAL DEMAND

86.    Plaintiff requests a jury trial with respect to each and every claim asserted herein.

WHEREFORE, Plaintiff requests judgment for and including:

(i)    Injunctive Relief;

(ii)    Compensatory Damages;

13

(iii)   Monetary Damages;

(iv)   Punitive Damages;

(v)   Pre-judgment Interest;

(vi)   Post-judgment Interest;

(vii)   Attorneys Fees and Costs; and

(viii)   Such other and further relief as is just and proper to the Court.

Dated:  Rhinebeck, New York
        March 9, 2016

Russell G. Wheeler
Bar Roll No. 517881
Charny & Associates
9 West Market Street
Rhinebeck, New York 12572
Tel - 845-876-7500
Fax - 845-876-7501
rwheeler@charnyandassociates.com

Attorneys for Plaintiff MaryAnn Tozzi

14